IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

METROPOLITAN ATLANTA TASK
FORCE FOR THE HOMELESS,
INC.,

   Plaintiff,

    v.

                         CIVIL ACTION FILE
                         NO. 1:09-CV-2833-TWT

THE CITY OF ATLANTA,
GEORGIA, a Municipal Corporation,

   Defendant.

## ORDER

This case arises out of the long standing dispute between the Plaintiff and the

City of Atlanta due to the Plaintiff's operation of a homeless shelter at the corner of

Peachtree and Pine Streets in downtown Atlanta.  The Plaintiff brings an action under

state law for damages for breach of contract, intentional interference with business and

contractual relations, defamation, and violation of Georgia constitutional due process;

it also seeks to compel the Defendant to provide water and sewer services and issue

Certificates of Compliance to the Plaintiff so that the Plaintiff may seek State

Department of Community Affairs ("DCA") funding and federal funding.  The

Plaintiff also asserts a violation of the First Amendment, the Fourteenth Amendment's

Equal Protection Clause and the Fifth and Fourteenth Amendment's guarantees of

substantive and procedural due process, and correspondingly seeks relief under 42 U.S.C. § 1983.   The Defendant counterclaims for damages for breach of contract. This case is before the Court on the Defendant's Motion for Summary Judgment [Doc. 126].   For the reasons set forth below, the Court GRANTS the Defendant's Motion for Summary Judgment as to the Plaintiff's claims, and GRANTS the Defendant's Motion for Summary Judgment on its counterclaim.

## I.  Background

The Plaintiff, Metropolitan Atlanta Task Force for the Homeless, Inc. (the "Task Force"), is a not-for-profit organization that provides food, water, shelter, and services to homeless individuals in Atlanta.  (Beaty Aff., ¶ 4.)  The Task Force owns a building at 475-477 Peachtree Street, Atlanta, Georgia, where it provides shelter services for up to 1,000 men per night.  (Beaty Aff., ¶ 4.)  The Task Force provides pro bono services and relies on grants and donations from public and private entities. (Second Am. Compl. ¶ 10.)

The Task Force purchases water and sewer services for its shelter from the City of Atlanta (the "City").  (Beaty Aff., ¶ 27.)  On October 7, 2008, the City sent the Task Force a letter stating that the City had erroneously failed to bill the Task Force for sewer charges for one year.  (Compl., Ex. E.)  The letter stated that the next bill would reflect these charges in the amount of $8,076.98.  (Id.)  On December 2, 2008,

after nonpayment of the bill, the City turned off the water to the Task Force's shelter. (Def.'s Br. in Supp. of Def.'s Mot. for Summ. J., Ex. 31.)  The Plaintiff filed suit in state court.  The Fulton County Superior Court issued a Temporary Restraining Order requiring the City to resume water and sewer services for fourteen days, at the end of which time the Task Force was required to pay its outstanding debt.  (Id.)  The City terminated the Task Force's water and sewer services again on June 22, 2009, due to delinquent payments.  (Def.'s Br. in Supp. of Def.'s Mot. for Summ. J., Ex. 32.)  Once more, the Fulton County Superior Court issued a Temporary Restraining Order requiring the City to resume the Task Force's water and sewer services for seven days; at the end of seven days the Task Force was required to pay its outstanding debt.  (Id.)  The Court noted that it was "extremely troubled" by the Plaintiff's history of delinquent payment and nonpayment, and that "if in the future water and sewage service is terminated due to [Plaintiff's] failure to comply with the terms of this Order, the Court will not entertain, without good cause, subsequent motions for interlocutory injunctions."  (Id.)

The Task Force's history of delinquent payment and nonpayment of its water and sewage services bill continues to this day.  As of May 13, 2011, the Task Force had an outstanding debt of $147,667.48 on its Inactive Account at 477 Peachtree

Street and an outstanding debt of $47,416.78 on its Active Account at 475 Peachtree Street.  (Harden Decl.)

The Task Force argues that its failure to pay is the result of the City's conspiracy to "drive the Task Force out of business," which has succeeded in depriving it of the necessary funds to pay the bills.  (Pl.'s Br. in Opp'n to Def.'s Mot. for Summ. J., at 10.)  The Task Force claims that since 1998 the City has "openly discriminated against the Task Force" because it serves men at the shelter. (Beaty Aff., ¶ 8.)  When the Task Force sought funding to improve its shelter in 1998, the City expressed hesitancy for the safety of women and children living in a shelter with single men (Pl.'s Br. in Opp'n to Def.'s Mot. for Summ. J., Ex. 13, at 1), and agreed to assist the Task Force in securing funding to operate the shelter for "women and children and intact families."  (Pl.'s Br. in Opp'n to Def.'s Mot. for Summ. J., Ex. 14, at 3.)  The Task Force claims that as part of the City's campaign to destroy it the City has defamed the Task Force in the press (Compl. ¶ 22), refused to issue Certificates of Compliance that the Task Force needs to pursue state and federal funding (Compl. ¶¶ 68-69), and interfered with the Task Force's contracts with other parties.  (Compl. ¶¶ 57-60.)

Accordingly, the Task Force has brought claims against the City for tortious interference with contract, defamation, and violations of the First Amendment, federal

constitutional due process and equal protection and Georgia constitutional due process, and 42 U.S.C. § 1983; furthermore, the Task Force requests an injunction requiring the City to issue Certificates of Compliance.  The Task Force also sues the City for breach of contract in refusing to supply the Task Force with water and sewer services and seeks an injunction requiring the provision of these services.  Finally, the Task Force seeks a declaratory judgment estopping the City from collecting on the debt it owes the City and seeks attorneys' fees.  The Defendant's Motion for Summary Judgment [Doc. 126] asks the Court to dismiss all of the Task Force's claims and grant the City summary judgment on its counterclaim for the balance due for water and sewage services rendered.

## II.  Motion for Summary Judgment Standard

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c). The court should view the evidence and any inferences that may be drawn in the light most favorable to the nonmovant.  Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970).  The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).  The burden then shifts to the nonmovant, who must go beyond

the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

III.  Discussion

A.      Sovereign Immunity

The City of Atlanta argues that it is entitled to sovereign immunity for the state tort claims brought by the Task Force.  Under the Georgia Constitution, sovereign immunity bars suit against the state and its political subdivisions in the absence of an explicit waiver by the state legislature. Ga. Const. art. 1, § II, ¶ IX(e).  There is no waiver here.  Sovereign immunity applies if the City of Atlanta and its employees acted pursuant to their governmental capacity, and does not apply if they acted pursuant to their proprietary, revenue-generating capacity.  Town of Ft. Oglethorpe v. Phillips, 224 Ga. 834 (1968).  "If public service is primary and profit only incidental, the City has municipal immunity." City of Atlanta v. Chambers, 205 Ga. App. 834, 836 (1992).  The Plaintiff has the "burden of producing evidence that would take the [government's action] outside a governmental function and convert it into a ministerial one." Id. (citing City of Valdosta v. Bellew, 178 Ga. App. 423, 426 (1986) (internal quotations omitted)).

The Plaintiff has not met this burden here.  The intentional interference with business and contractual relations alleged by the Task Force (Second Am. Compl. ¶¶

57-60), even if true, were not performed for "business purposes, and for [the City's] own advantage or profit." <u>Mayor of Savannah v. Jordan</u>, 142 Ga. 409, 410 (1914). At most, the Task Force can only show that the City of Atlanta and its officers intentionally interfered with the Task Force's business relationships because they did not approve of the Task Force's operation of the homeless shelter and its impact on the City. The Task Force cannot prove that the City of Atlanta was motivated by its own pecuniary gain. Likewise, any alleged defamation by the City of Atlanta was not motivated by generating a profit. The City is entitled to sovereign immunity as to the state law tort claims.

      B.    First Amendment Claim

In its response to the City's Motion for Summary Judgment, the Plaintiff argues that it has a First Amendment claim. However, the Task Force did not make a First Amendment claim in its Second Amended Complaint. The Task Force makes a general claim for monetary relief under 42 U.S.C. § 1983, but this does not satisfy Rule 8(a)(2)'s requirement that the complaint set forth a "short and plain statement of the claim." By omitting any reference of First Amendment violations in the Second Amended Complaint, the Task Force failed to "give the [D]efendant fair notice of what the [P]laintiff's claim is and the grounds upon which it rests." <u>Quality Foods v. Latin American Agribusiness Dev. Corp.</u>, 711 F.2d 989, 995 (11th Cir. 1983). This

Court will not consider claims raised for the first time in response to a summary judgment motion.  Gilmour v. Gates, 382 F.3d 1312, 1315 (11th Cir. 2004).

      C.     Due Process and Equal Protection

The Task Force asserts that the City violated the Due Process Clause and the Equal Protection Clause,[1] as enforced by 42 U.S.C. § 1983.  "To establish a claim under 42 U.S.C. § 1983, a plaintiff must prove (1) a violation of a constitutional right, and (2) that the alleged violation was committed by a person acting under color of state law.  The first inquiry in any § 1983 lawsuit...is whether the plaintiff has been deprived of a right secured by the Constitution and laws."  Holt v. Glenn, 361 Fed. Appx. 75, 77 (11th Cir. 2010) (internal citations omitted).

The Fourteenth Amendment guarantees to every citizen that no State shall "deprive any person of life, liberty, or property, without due process of law …." U.S. Const. amend. XIV, § 1. The Supreme Court has held that the Due Process Clause provides both procedural and substantive rights.  Zinermon v. Burch, 494 U.S. 113, 125 (1990).  Under Georgia law, if a property interest exists, federal law governs what minimal due process is required.  Board of Comm'rs of Effingham County v. Farmer, 228 Ga. App. 819, 819-20 (1997).

_____

[1]The Task Force waives the opportunity to challenge a violation of the Equal Protection Clause on behalf of the homeless people it serves.  (Pl.'s Br. in Opp'n to Def.'s Mot. for Summ. J., at 40.)

The Task Force alleges that the City took from it the following interests: "(1) the building at Peachtree and Pine; (2) eligibility for state and federal grants; (3) the ability to pursue its profession; and (4) its reputation and business relations." (Pl.'s Br. in Opp'n to Def.'s Mot. for Summ. J., at 36.)   As previously mentioned, the Task Force's grievance regarding harm to its reputation and business relations are state law tort claims barred by sovereign immunity under the Georgia Constitution.  As for the building at Peachtree and Pine and the ability to pursue its profession, the Task Force has not introduced evidence demonstrating that there was an actual deprivation of these interests that was caused by the City.  The plaintiff has "to prove an actual deprivation of a constitutional right; a conspiracy to deprive is insufficient." Cook v. Randolph County, Georgia, 573 F.3d 1143, 1153 (11th Cir. 2009) (quoting Villanueva v. McInnis, 723 F.2d 414, 416 (5th Cir. 1984)).

The remaining interest is eligibility for state and federal grants.  To qualify for DCA funding, the Task Force must obtain a certificate from the City stating that Task Force's programs are "consistent" with the City's Consolidated Plan for housing.  24 C.F.R. § 91.2.  "A jurisdiction's certification that an application is consistent with its consolidated plan means the jurisdiction's plan shows need, the proposed activities are consistent with the jurisdiction's strategic plan, and the location of the proposed activities is consistent with the geographic areas specified in the plan. The jurisdiction

shall provide the reasons for the denial when it fails to provide a certification of consistency."  24 C.F.R. § 91.510.

The Task Force does not have a constitutionally protected property interest in either the Certificate of Consistency or in eligibility for state grants.  "[I]n order to establish a constitutionally protected property interest, a person must have more than a 'unilateral expectation of it;' instead, one must have a 'legitimate claim of entitlement to it.'" A.A.A. Always Open Bail Bonds, Inc. v. DeKalb County, 129 Fed. Appx. 522, 523-24 (11th Cir. 2005) (quoting Board of Regents v. Roth, 408 U.S. 564, 577 (1972)).

The Task Force was a mere applicant for a benefit, dependent on the approval of both the City of Atlanta and the DCA.  "When addressing a plaintiff who is merely an applicant for a license or benefit...the critical inquiry is whether the...statute grants discretion to the decisionmaker who approves or denies the license." A.A.A. Always Open Bail Bonds, 129 Fed. Appx. at 524.  24 C.F.R. § 91.510 gives local officers discretion to issue or decline to issue Certificates of Consistency based upon an evaluation of whether the applicant's activities are consistent with those of the jurisdiction's strategic plan.  The Task Force cannot claim it is entitled to a benefit that can be lawfully withheld.

The Equal Protection Clause of the Fourteenth Amendment states that "[n]o State shall … deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.  Since the Task Force does not assert that it is a member of a protected class, its claim must be brought upon a "class of one" legal theory first acknowledged in <u>Village of Willowbrook v. Olech</u>, 528 U.S. 562 (2000). In order to succeed on a claim for an Equal Protection violation for a class-of-one, the Task Force must show that it "has been intentionally treated differently from others similarly situated" and that "there is no rational basis for the difference in treatment." <u>Id.</u> at 564. "Different treatment of dissimilarly situated persons does not violate the equal protection clause." <u>E & T Realty v. Strickland</u>, 830 F.2d 1107, 1109 (11th Cir. 1987).  The Task Force has not introduced facts demonstrating that it was treated differently from others similarly situated.  It does not provide evidence regarding the treatment of other homeless shelters by the City, or even whether the other homeless shelters were similarly situated.  The claim is dismissed.

D.     <u>Breach of Water and Sewer Services Contract</u>

The City supplies the Task Force with water and sewer services in exchange for payment.  The City has the right to terminate service when a customer fails to pay for services rendered.  <u>Liner v. City of Rossville</u>, 213 Ga. 756 (1958).  Moreover, the City's Code requires the termination of services due to non-payment.  (Atlanta Code

§ 154-120, Br. in Supp. of Def.'s Mot. for Summ. J., Ex. 30.)  The Task Force has

breached this contract by failing to pay on several occasions, and has incurred a large

debt.  (Harden Decl.)  The Task Force must pay the City the sum total of the debt on

both the Active and Inactive Accounts as of the date of this Order.  Moreover, the

Task Force's claim for declaratory judgment under O.C.G.A. § 9-4-1 <u>et seq</u>. is denied.

The appropriate remedy for this breach of contract action is a legal claim for damages.

>    E.    <u>Injunctive Relief</u>

In its complaint, the Task Force requests immediate injunctions requiring the

City to issue Certificates of Compliance and to provide water and sewer services. The

request to enjoin the City to provide water and sewer services was heard and disposed

of in Fulton County Superior Court.  (Def.'s Br. in Supp. of Def.'s Mot. for Summ.

J., Exs. 31-32.)  The request to enjoin the City to issue Certificates of Compliance is

moot.  The Task Force did not apply for the Certificates for the 2010-2011 period.

(Task Force Dep. at 129.)  If the Task Force seeks a permanent injunction requiring

the City to issue Certificates, the Court denies that request.

Where mandamus is sought to compel an official act which is discretionary, as

the City's issuance of Certificates of Compliance is, it should generally not be granted,

as the plaintiff can demonstrate no clear legal right. <u>Clear Vision CATV Servs., Inc.</u>

<u>v. Mayor of Jesup</u>, 225 Ga. 757 (1969). O.C.G.A. § 9-6-21 states that mandamus may

not be issued against a "public officer who has an absolute discretion to act or not to act unless there is a gross abuse of such discretion." Thus, if a defendant's decision is discretionary, a plaintiff must establish that the defendant grossly abused this discretion in order to obtain affirmative injunctive relief.  This the Task Force cannot do.

F.     Attorneys' Fees

Finally, because the Task Force's underlying claims fail, the Plaintiff's claim for attorneys' fees must also fail.  O.C.G.A. § 13-6-11 "does not create an independent cause of action but merely permits in certain limited circumstances the recovery of the expenses of litigation incurred as an additional element of damages."  Lamb v. Salvage Disposal Co. of Ga., 244 Ga. App. 193, 196 (2000).  As discussed above, the Task Force's claims against the City have been dismissed.  Thus, the Task Force's claim for attorneys' fees against the City is also dismissed.

IV.  Conclusion

For the reasons set forth above, the Court GRANTS the Defendant's Motion for Summary Judgment as to the Plaintiff's claims, and GRANTS the Defendant's Motion for Summary Judgment on its counterclaim.  The Clerk is directed to enter judgment in favor of the Defendant in the amount of $147,288.73.

SO ORDERED, this 21 day of September, 2011.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge